## S96A1006. HAPPOLDT v. THE STATE.
(475 SE2d 627)

HINES, Justice.

James Milton Happoldt was found guilty of the malice murder and felony murder of his ex-wife Janice Buice, of aggravated assault on his son Jackson Happoldt, and possession of a firearm during the commission of a felony. We affirm Happoldt's convictions.*

---

[1] *Vargas v. Morris,* 266 Ga. 141 (465 SE2d 275) (1996).

[2] Id. at 142.

* The crimes occurred on March 3, 1994. Happoldt was indicted on May 16, 1994, for the malice murder and felony murder of Janice Buice, of aggravated assault on his son Jackson Happoldt, and possession of a firearm during the commission of a felony. He was tried on August 18, 1994, and was found guilty of all charges. On August 18, 1994, Happoldt was sentenced to life imprisonment for malice murder, twenty years imprisonment to be served consecutively for aggravated assault, and five years to be served consecutively to the twenty years for possession of a firearm during the commission of a felony. The felony murder con-

The evidence, considered in a light most favorable to the verdict, showed that on March 3, 1994, Happoldt and Buice had an argument on the telephone about child support. That afternoon, Happoldt went to his ex-wife's residence and waited for her to arrive. As Buice and Jackson approached the garage, Happoldt fired three shots into Buice's side of the automobile, killing her and injuring his son. Jackson testified that his father told him, after the shooting, "[t]his is what happens when people screw me," and that as he was entering the house he heard an additional gunshot in the garage. The medical examiner, who performed the autopsy, testified that Buice had been shot three times from a distance and once in the head from within two inches. The evidence demonstrated that the last gunshot Jackson heard, while entering the house, caused the wound to Buice's head. There was also testimony from Happoldt's girl friend, Clemons, that three weeks before the crimes Happoldt told her that he would kill his ex-wife for what she had done to him and his family.

1. Happoldt contends that the evidence was insufficient to sustain his convictions of malice murder and aggravated assault. We disagree.

(a) The jury, assessing the weight of the evidence and the credibility of witnesses, chose not to believe Happoldt's testimony that shooting Buice was a split second decision and the result of an uncontrollable feeling. *Roker v. State*, 262 Ga. 220 (416 SE2d 281) (1992). The evidence was sufficient to enable a rational trier of fact to find Happoldt guilty beyond a reasonable doubt of the malice murder of his ex-wife. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(b) The State was not required to prove that Happoldt intended to shoot his son, Jackson, in order to establish the crime of aggravated assault in this case. Under the doctrine of transferred intent, "[w]hen an unintended victim is struck down as a result of an unlawful act actually directed against someone else, the law prevents the actor from taking advantage of his own wrong and transfers the original intent from the one against whom it was directed to the one who actually suffered from it." *Fussell v. State*, 187 Ga. App. 134, 136 (4) (369 SE2d 511) (1988). Testimony at trial established that Happoldt shot into the car intending to kill his ex-wife and that one of the bullets struck his son in the side. The evidence was sufficient to enable a

viction stood vacated by operation of law, OCGA § 16-1-7. His motion for a new trial, filed on September 12, 1994, and amended on November 14, 1995, was denied on December 15, 1995. A motion for an out-of-time appeal was granted on February 28, 1996. The notice of appeal was filed on February 28, 1996, and the appeal was docketed with this Court on March 20, 1996. The case was submitted for decision without oral argument on May 22, 1996.

rational trier of fact to find Happoldt guilty beyond a reasonable doubt of aggravated assault on his son. *Jackson v. Virginia,* supra. ·

2. Happoldt asserts that the trial court abused its discretion in denying his motion for change of venue. We disagree.

The trial court·has the discretion to grant a change of venue and its determination will not be disturbed absent an abuse of that discretion. *Chancey v. State,* 256 Ga. 415, 429 (5) (349 SE2d 717) (1986). "In a motion for a change of venue, the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. [Cit.]" *Grace v. State,* 210 Ga. App. 718, 720 (3) (437 SE2d 485) (1993).

Considering the record, we cannot say that the setting of the trial was inherently prejudicial as a result of the pretrial publicity or that there was actual prejudice in the jury selection process rendering a fair trial impossible. Happoldt made no showing that the publicity contained information that was factually incorrect or that the publicity was inflammatory or reflective of an atmosphere of hostility.[2] Compare *Tyree v. State,* 262 Ga. 395 (418 SE2d 16) (1992). Additionally, Happoldt used only nine of his peremptory challenges during the jury selection, and failed to demonstrate that the jury panel had a fixed opinion concerning his guilt because of exposure to the pretrial publicity. See *Davis v. State,* 241 Ga. 376, 382 (5) (247 SE2d 45) (1978). The trial court did not abuse its discretion in denying the motion for change of venue.

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 23, 1996.

*Buafo & Associates, Althea L. Buafo,* for appellant.

*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Assistant District Attorney, Michael J. Bowers, Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.

---

[2] The publicity in question amounted to seven articles run in three newspapers from March 4, 1994 to July 6, 1994, as well as one television broadcast about the upcoming trial which was shown on August 12, 1994. The statements made by the police in the articles detailed the nature of the events leading to the shooting and included a statement that "[t]here was no way she could get away. He [Happoldt] waited there on her. And then when she showed up, he ambushed her . . . he opened fire." Another statement was made by the Sheriff, who said that "every indication we got is that he [Happoldt] planned to come there and kill her." One article stated that Happoldt had been questioned by police in regard to two unsolved five-year-old murders. Another article stated that Happoldt had moved for a change of venue.