S12A1663. REDDINGS v. THE STATE.
(738 SE2d 49)

HUNSTEIN, Chief Justice.

Appellant Michael Reddings was convicted of murder, aggravated assault, and two weapons possession counts in connection with the 2009 stabbing death of Daisy Pearl Brown. Reddings appeals the denial of his motion for new trial, contending that the trial court committed reversible error by failing to merge the aggravated assault conviction with the murder conviction and by denying his motion for change of venue. We agree with Reddings that the failure to merge was error, and we therefore vacate his convictions for aggravated

assault and the related weapons possession count. In all other respects, we affirm the trial court's judgment.[1]

1. Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. On the afternoon of September 12, 2009, Reddings called 911 to report the death of Brown, with whom Reddings lived as a tenant. When emergency responders arrived at the victim's Emanuel County trailer home, they found the victim dead in the bathroom, surrounded by a pool of blood. She had been stabbed six times in the head, neck, torso, and back, and had also sustained wounds to her hands consistent with an attempt to defend herself. There were signs of possible forced entry through the front door of the home. Based on blood found throughout the trailer, a crime scene specialist determined that the victim had initially been attacked in the foyer and had crawled to the bathroom, where she died. Due to the condition of the blood found in the home at the time the victim was discovered, investigators concluded that the attack had occurred several hours earlier.

In an interview that day at the sheriff's office, Reddings told investigators that he had arrived home from his morning shift at a local poultry plant to find the victim dead. Investigators noticed blood on his pants, which he claimed was chicken blood, but which forensic testing later confirmed was human blood. Investigators also observed fresh cuts and scratches on Reddings' hands and forearm. Having given an initial statement to investigators at the scene regarding his activities on the previous night, Reddings changed his account in material respects when confronted with evidence inconsistent with his initial story.

In a search of the victim's trailer, investigators found a pair of black "shower shoes" stained with human blood, the treads of which matched bloody shoe prints inside the trailer. Several witnesses testified that Reddings had been wearing black shower shoes on the evening of September 11. The insides of the socks that Reddings had

---

[1] Reddings was indicted in April 2010 by an Emanuel County grand jury on one count of malice murder, one count of felony murder, one count of aggravated assault, and three counts of possession of a knife during the commission of these felonies. Following a jury trial held in January 2011, Reddings was found guilty of the malice murder and aggravated assault counts, as well as the weapons possession counts associated with those two crimes. He was sentenced on January 13, 2011 to life imprisonment for murder; a consecutive five-year term for the first weapons count; a concurrent twenty-year term for the aggravated assault; and an additional consecutive five-year term for the second weapons count. Reddings filed a motion for new trial on January 19, 2011 and amended his motion in January 2012. After Reddings waived oral argument, the trial court denied the motion for new trial on April 17, 2012. Reddings filed a timely notice of appeal on May 15, 2012. The appeal was docketed to the September term of this Court and was thereafter submitted for decision on the briefs.

been wearing at the scene were visibly smeared with blood, which was later identified as the victim's.

Reddings' girlfriend, Karen Cooper, testified that on the night of September 11, Reddings was at her home, where the two used crack cocaine, but that he had left several times during the night. Several of the victim's family members and co-workers testified that the victim had been having problems with Reddings and that she wanted Reddings to move out because he was not paying rent. Two of these witnesses testified that Reddings had been physically abusive to the victim, and one testified that Reddings had told her that he would kill her before he would move out. Cooper further testified that, on the night of September 11, Reddings told her he was "getting tired of" the victim.

Co-workers of Reddings testified that he carried a sharp pocket-knife with a four-inch blade. A jail inmate who shared a cell block with Reddings after his arrest testified that Reddings told him that he had killed the victim and tried to make it look like a burglary.

The evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Reddings was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Reddings contends that his aggravated assault conviction merged as a matter of fact with his murder conviction. We agree.

> OCGA § 16-1-7 (a) affords a defendant with substantive double jeopardy protection by prohibiting multiple convictions and punishments for the same offense. *Drinkard v. Walker*, 281 Ga. 211, 212 (636 SE2d 530) (2006). OCGA § 16-1-7 (a) (1) prohibits a defendant from being convicted of more than one crime if one crime is included in another, and aggravated assault is included in the crime of malice murder when the former "is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of [the latter]." [Cit.]

*Coleman v. State*, 286 Ga. 291, 294-295 (3) (687 SE2d 427) (2009). Therefore, where a victim suffers a series of injuries inflicted by a single assailant in rapid succession, each injury does not constitute a separate assault. *Montes v. State*, 262 Ga. 473 (1) (421 SE2d 710) (1992). See, e.g., *Grell v. State*, 291 Ga. 615 (1) (732 SE2d 741) (2012) (aggravated assault convictions should have merged where defendant shot victim first in ear, then in leg); *Bell v. State*, 284 Ga. 790 (1) (671 SE2d 815) (2009) (aggravated assault conviction should have

merged into murder conviction where defendant struck victim multiple times with the same weapon). Separate convictions for the malice murder and aggravated assault of a single victim may be permitted, however, where there is evidence that a "deliberate interval" separated the infliction of an initial non-fatal injury from the infliction of a subsequent fatal injury. *Coleman*, 286 Ga. at 295 (3). See, e.g., *Ortiz v. State*, 291 Ga. 3 (3) (727 SE2d 103) (2012) (finding deliberate interval where, in period between non-fatal and fatal shots, victim fled and defendant shot a different victim); *Lowe v. State*, 267 Ga. 410 (1) (b) (478 SE2d 762) (1996) (finding deliberate interval where defendant shot victim in the arm, victim fell, and defendant walked around car, took deliberate aim at pleading victim, and fired fatal shot).

Here, there is no evidence of any interval, deliberate or otherwise, separating the infliction of the victim's non-fatal wounds from the infliction of the wounds that killed her. The medical examiner opined that the victim's death was caused by stab wounds to her torso, neck, and head. The evidence showed that the victim had also sustained injuries to her back and hand. However, there is no evidence regarding the order in which these various wounds were sustained and no evidence to support the finding of a "deliberate interval" between the infliction of any of the wounds the victim suffered. Accordingly, we must vacate Reddings' aggravated assault conviction and the associated weapons possession conviction. See *Coleman*, 286 Ga. at 295 (3); *Montes*, 262 Ga. at 474 (1).

3. Reddings contends the trial court erred in denying his motion for a change of venue. To be entitled to a change of venue, a defendant must show that either (1) the setting of the trial is inherently prejudicial or (2) the jury selection process reflected actual prejudice to a degree that renders a fair trial impossible. *Happoldt v. State*, 267 Ga. 126 (2) (475 SE2d 627) (1996). We will affirm a trial court's determination regarding a requested change of venue absent an abuse of discretion. Id. at 128. We find no such abuse of discretion here, where the complained-of pretrial publicity consisted of two local newspaper articles published more than a year before trial and only two prospective jurors indicated they had any familiarity with the case. See *Walden v. State*, 289 Ga. 845 (2) (717 SE2d 159) (2011).

We are similarly unpersuaded by the argument that the members of the jury venire had too many personal connections with the victim or local law enforcement officials. The trial court appropriately excused five potential jurors for cause and properly ascertained that several others who had some acquaintance with the victim or witnesses would be able to render a verdict based solely on the evidence. See *Chancey v. State*, 256 Ga. 415 (5) (C) (349 SE2d 717) (1986)

(determinative issue is whether jurors could lay aside their opinions and render verdict based on the evidence). There was no error in denying Reddings' motion for change of venue.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED FEBRUARY 4, 2013.

*Brandi D. Payne*, for appellant.

*S. Hayward Altman*, District Attorney, *Kelly A. Jenkins*, Assistant District Attorney, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Katherine R. Thrower*, Assistant Attorney General, for appellee.