304 Ga. 276
FINAL COPY

S18A0826.  HARRIS v. THE STATE.

HUNSTEIN, Justice.

Appellant Joseph Irvine Harris was tried and convicted of murder and

related offenses in connection with crimes he committed against David Rucker,

Ashley Gay, and their two minor children.[1]  Harris appeals, alleging three

_____

[1] On November 28, 2012, a Clayton County grand jury indicted Appellant Joseph Irvine Harris, along with Denirio Cunningham, as follows: malice murder of Rucker (Count 1); felony murder of Rucker predicated on burglary (Count 2); burglary (Count 3); aggravated assault of Rucker (Count 4); aggravated assault of Gay (Count 5); aggravated assault with intent to rob of Rucker (Count 6); aggravated assault with intent to rob Gay (Count 7); false imprisonment of Gay (Count 8); false imprisonment of D. R., a minor girl (Count 9); false imprisonment of D. R., a minor boy (Count 10); criminal trespass (Count 18); and two counts of cruelty to children in the first degree (Counts 19 and 20).  Regarding Counts 11-17, Cunningham alone was charged with seven separate counts of possession of a firearm during the commission of a crime.

Harris and Cunningham were tried together from July 8-12, 2013.  Harris was convicted on all charges.  On August 1, 2013, the trial court sentenced Harris to life without parole for malice murder (Count 1), twenty years consecutive for burglary (Count 3), twenty years concurrent for the aggravated assault of Gay (Count 5), three ten-year concurrent sentences for the false imprisonment charges (Counts 8-10), two twenty-year concurrent sentences for the cruelty charges (Counts 19 and 20), and twelve months concurrent for criminal trespass (Count 18).  The remaining charges were merged or vacated by operation of law, rulings which were not challenged on appeal.  See Dixon v. State, 302 Ga. 691 (808 SE2d 696) (2017).

Harris timely filed a motion for new trial on August 28, 2013, which he

instances of trial court error. Though we find no reversible trial court error, we reverse Harris' convictions and sentences for false imprisonment because of insufficient evidence.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial established that, on the evening of June 14, 2012, Harris and his co-defendant, Denirio Cunningham, asked their acquaintance, Keith Alexander, for a ride to Brooks Crossing Apartments in Clayton County so that Harris could retrieve some clothing. Alexander agreed, and Harris provided directions so that Alexander could drive the men to the apartment complex.

Around 9:00 p.m., Ashley Gay and David Rucker had just put their children to bed when they heard banging on the balcony door of their second floor apartment. Soon thereafter, they heard the sound of someone climbing through their closed window blinds. Rucker and Gay barricaded themselves and their two screaming, scared children (D. R., a minor girl, and D. R., a minor boy) in the back bedroom of the apartment. Harris and Cunningham kicked in

subsequently amended on April 30, 2015. After a hearing, the trial court denied the motion as amended in an order filed on March 30, 2017. Harris timely filed a notice of appeal. The case was docketed to the April 2018 term of this Court and submitted for a decision on the briefs.

one bedroom door before proceeding to the back bedroom where the family was hiding. After the men succeeded in kicking down that door, Rucker pushed the men out of the room and down the hallway, shouting, "No, bro, no, bro, my kids in here." Gay heard a gunshot, then the apartment fell silent. When Gay looked around the corner, she saw Rucker lying on the floor.

Harris and Cunningham hurried back to Alexander's car. They jumped inside and told him to "pull off, pull off." Alexander drove away, asking the men numerous times what had happened, but neither man would answer. Finally, when Alexander pulled into the driveway of a friend's house, Harris, who looked upset, responded, "Man, stuff got real crazy in there." Alexander continued to push for information; Cunningham explained that he and Harris were "trying to hit a lick" and admitted to shooting "Ruck."

Officers arrived at the scene and found Rucker unresponsive. The medical examiner determined that Rucker died from a single gunshot wound to the chest and found signs of blunt force trauma to Rucker's face and forehead. During their investigation, officers located a chair positioned on top of the air conditioning unit just below the victims' second floor balcony and found a

3

window screen lying on the victims' balcony. Gay told officers that the two intruders had on black masks and black gloves, and, though she did not see their faces, she believed "Joe," one of Rucker's longtime friends, might have been responsible. Law enforcement dusted the apartment's balcony door for prints and located a fingerprint that matched Harris' left index finger.

A few days later, Alexander informed law enforcement that Harris and Cunningham were involved in the victim's murder. The two men were subsequently arrested and held at the Clayton County Jail. While there, both men made numerous incriminating statements to other individuals regarding their participation in the crimes. Cunningham also attempted to have Alexander killed in order to prevent him from testifying. Finally, the State introduced evidence at trial via OCGA § 24-4-404 (b) ("Rule 404 (b)") of a prior robbery allegedly committed by both defendants.

1. Although Harris does not argue that the evidence was insufficient to sustain his convictions, per our general practice in murder cases, we will review the sufficiency of the evidence in this case. When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v.

4

Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013). Moreover, a "reviewing court must consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." (Citations and punctuation omitted.) Kemp v. State, 303 Ga. 385, 388 (810 SE2d 515) (2018).

Viewed in this manner, the evidence was sufficient to sustain Harris' convictions and sentences for malice murder, burglary, aggravated assault (Gay), cruelty to children, and criminal trespass. However, we find that the evidence was insufficient to support Harris' convictions and sentences for false imprisonment. "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). Here, there is no evidence that Harris arrested, confined, or detained any of the victims. Indeed,

5

the victims *chose* to barricade themselves and their children in their back bedroom and tried to stop Harris and his co-defendant from entering. Consequently, the evidence was insufficient to establish Harris' guilt beyond a reasonable doubt regarding the three counts of false imprisonment, and his convictions and sentences for the same must be reversed.

2. Turning to Harris' enumerations of error, he first contends that the trial court erred by failing to grant a mistrial or a continuance after the State played a recorded jail phone call between Harris and another witness which, Harris alleges, had not been provided during the course of discovery.

The record shows that, at trial, Harris moved that the jail recording be excluded from evidence due to the alleged discovery violation. The record further shows that trial counsel knew that a recording of the jail call existed, that counsel had a summary of the contents of the call, and that he was allowed to listen to the call prior to its introduction into evidence. Based on the foregoing, the trial court admitted the recording, finding that the State did not violate the rules of discovery. Now, for the first time on appeal, Harris claims that the trial court erred by not granting a mistrial or a continuance. Because Harris did not raise this claim below, and because he is not challenging an evidentiary ruling

by the trial court, this error is not preserved for appellate review. See

McClendon v. State, 299 Ga. 611, 616 (791 SE2d 69) (2016) ("Because

[appellant] raise[d] an issue on appeal that was not presented or ruled upon by

the trial court, his argument is not preserved for review by this Court."); cf.

Gates v. State, 298 Ga. 324 (3) (781 SE2d 772) (2016) (recognizing that the

plain error test adopted in Kelly applies to rulings on evidence).

3.     Next, Harris contends that the trial court erred in denying his motion

to sever his trial from that of his co-defendant Cunningham. In non-death

penalty cases, "[a] trial court has the discretion to grant or deny a severance in

a joint trial." Ballard v. State, 297 Ga. 248, 255 (8) (773 SE2d 254) (2015). See

also OCGA § 17-8-4. The three factors a trial court should consider when

determining whether to grant or deny a motion to sever are

> (1) whether the number of defendants will confuse the jury as to the
> evidence and the law applicable to each defendant; (2) whether,
> despite cautionary instructions from the court, there is a danger that
> evidence admissible against one defendant will be improperly
> considered against another defendant; and (3) whether the defenses
> of the defendants are antagonistic to each other or to each other's
> rights of due process.

<u>Green v. State</u>, 274 Ga. 686, 687-688 (2) (558 SE2d 707) (2002). "It is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed." Id. at 688 (2).

Harris has failed to make the required showing of prejudice. First, there is no indication that the jury confused the evidence or the law applicable to him and his co-defendant, as both men were mostly charged with the same offenses that stemmed from the same evidence and fact pattern. Further, the jury was instructed on mere association, mere presence, and parties to a crime, and the jury returned a separate verdict for each defendant pursuant to the trial court's instruction. It is also highly unlikely that the evidence admitted against Cunningham regarding his plan to murder Alexander was improperly considered against Harris. Defense counsel informed the jury during opening statements that not all evidence would apply to both defendants, and, in closing arguments, the State only focused on Cunningham when mentioning the plot against Alexander. Finally, the record does not show that the defenses of the co-defendants were antagonistic. Based on the foregoing, the trial court did not

abuse its discretion in denying Harris' motion to sever. See <u>McClendon</u>, 299 Ga. at 615 (3).

4. Prior to trial, the State filed a notice of intent pursuant to Rule 404 (b) to introduce evidence of a prior home invasion and armed robbery allegedly committed by Harris and Cunningham. At a pre-trial hearing on the notice, the State made a proffer showing as follows. Two months prior to Rucker's murder, Rogers Glenn was at home with his girlfriend when Harris and a masked man (later identified as Cunningham) entered the residence. Both men were armed and held the victims at gunpoint. After Cunningham struck Glenn over the head, rendering him unconscious, Cunningham forced the girlfriend to perform oral sex on him at gunpoint. The men then stole wallets, cash, jewelry, and electronics from the home; the victims' wallets were later recovered from Cunningham's bedroom.

The State requested that this other acts evidence be admitted at Harris' trial in order to establish intent, motive, and plan. Harris objected, arguing that the State failed to meet the requirements for admission of the evidence to show intent, motive, or plan; there was insufficient evidence connecting Harris to the

9

alleged acts; the evidence was more prejudicial than probative; and the acts were not sufficiently similar to be admitted. The trial court admitted the evidence for the purposes of demonstrating "intent, preparation and plan," concluding that the probative value of the other acts evidence was not substantially outweighed by undue prejudice. Harris asserts that the admission of this evidence at trial was error.

Assuming, without deciding, that the trial court's ruling was erroneous, based upon the strong evidence establishing Harris' guilt, including witness testimony and identification, fingerprint evidence, and the many incriminating statements made by both defendants, we conclude that it is highly probable that any error did not contribute to the jury's guilty verdict. See Timmons v. State, 302 Ga. 464, 471 (2) (b) (807 SE2d 363) (2017); Boothe v. State, 293 Ga. 285, 294 (2) (b) (745 SE2d 594) (2013).

Judgment affirmed in part and reversed in part. Hines, C. J., Melton, P. J., Benham, Nahmias, Blackwell, Boggs, and Peterson, JJ., concur.

Decided August 20, 2018.

Murder. Clayton Superior Court. Before Judge Simmons.

Jonathan R. Melnick, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Jeffrey M. Gore, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.