304 Ga. 789
FINAL COPY

S18A1525.  CUNNINGHAM v. THE STATE.

HUNSTEIN, Justice.[1]

Appellant Denirio Perrell Cunningham was tried and convicted of murder and related offenses in connection with crimes he committed against David Rucker, Ashley Gay, and their two minor children.[2]  Cunningham appeals,

---

[1] It has been an honor and a privilege to serve the people of the State of Georgia for over 30 years.

[2] On November 28, 2012, a Clayton County grand jury indicted Cunningham, along with Joseph Irvine Harris, as follows: malice murder of Rucker (Count 1); felony murder of Rucker predicated on burglary (Count 2); burglary (Count 3); aggravated assault of Rucker (Count 4); aggravated assault of Gay (Count 5); aggravated assault with intent to rob of Rucker (Count 6); aggravated assault with intent to rob of Gay (Count 7); false imprisonment of Gay (Count 8); false imprisonment of D. R., a minor girl (Count 9); false imprisonment of D. R., a minor boy (Count 10); criminal trespass (Count 18); and two counts of cruelty to children in the first degree (Counts 19 and 20).  Regarding Counts 11-17, Cunningham alone was charged with seven separate counts of possession of a firearm during the commission of a crime (Count 11 — burglary; Count 12 — aggravated assault of Rucker; Count 13 — murder of Rucker; Count 14 — aggravated assault of Gay; Count 15 — false imprisonment of Gay; Count 16 — false imprisonment of D. R., a minor girl; Count 17 — false imprisonment of D. R., a minor boy).

Cunningham and Harris were tried together from July 8-12, 2013. Cunningham was convicted on all charges.  On August 1, 2013, the trial court sentenced him to life without parole for malice murder (Count 1), twenty years consecutive for burglary (Count 3), twenty years concurrent for the aggravated assault

alleging that the evidence was insufficient to support his convictions, that the trial court erred by improperly admitting evidence pursuant to OCGA § 24-4-404 (b), and that he received ineffective assistance of counsel. We reverse Cunningham's convictions and sentences for false imprisonment and the related weapons charges because of insufficient evidence, but we affirm his remaining convictions and sentences.

Viewed in the light most favorable to the jury's verdict, the evidence presented at trial established that, on the evening of June 14, 2012, Cunningham and his co-defendant, Joseph Harris,[3] asked their acquaintance, Keith Alexander, for a ride to Brooks Crossing Apartments in Clayton County so that Harris

---

of Gay (Count 5), three ten-year concurrent sentences for the false imprisonment charges (Counts 8-10), two twenty-year concurrent sentences for the cruelty charges (Counts 19 and 20), and twelve months concurrent for criminal trespass (Count 18). The trial court also sentenced Cunningham on four of the weapons charges wherein he received five years each on Counts 11, 14, 16 and 17 to run concurrent to each other but consecutive to Cunningham's other sentences. The remaining charges were merged or vacated by operation of law, rulings which were not challenged on appeal. See Dixon v. State, 302 Ga. 691 (4) (808 SE2d 696) (2017).

Cunningham timely filed a motion for new trial on September 3, 2013, which he subsequently amended through new counsel on January 21, 2015, December 28, 2015, and January 4, 2016. After a hearing, the trial court denied the motion as amended in an order filed on March 15, 2018. Cunningham timely filed a notice of appeal to this Court. The case was docketed to the August 2018 term of this Court and submitted for a decision on the briefs.

[3] This Court recently affirmed Harris' convictions and sentences in part and reversed them in part. See Harris v. State, 304 Ga. 276 (818 SE2d 530) (2018).

2

could, ostensibly, retrieve some clothing.  Alexander agreed and Harris provided directions so that Alexander could drive the men to the apartment complex.

Around 9:00 p.m., Ashley Gay and David Rucker had just put their children to bed when they heard banging on the balcony door of their second-floor apartment.  Soon thereafter, they heard the sound of someone climbing through their closed window blinds. Gay and Rucker barricaded themselves and their two screaming children (D. R., a minor girl, and D. R., a minor boy) in the back bedroom of the apartment.  Cunningham and Harris kicked in one bedroom door before proceeding to the back bedroom where the family was hiding.  After the men succeeded in kicking down that door, Rucker pushed the men out of the room and down the hallway, shouting, "No bro, no bro, my kids in here." Gay heard a gunshot, then the apartment fell silent.  When Gay looked around the corner, she saw Rucker lying on the floor.

Cunningham and Harris hurried back to Alexander's car.  They jumped inside and told him to "pull off, pull off."  Alexander drove away, asking the men numerous times what had happened, but neither man would answer. Finally, when Alexander pulled into the driveway of a friend's house, Harris,

who looked upset, responded, "Man, stuff got real crazy in there." Alexander continued to push for information; Cunningham explained that he and Harris were "trying to hit a lick" and admitted to shooting "Ruck."

Officers arrived at the scene and found Rucker unresponsive. The medical examiner determined that Rucker died from a single gunshot wound to the chest and found signs of blunt force trauma to Rucker's face and forehead. During their investigation, officers located a chair positioned on top of the air conditioning unit just below the victims' second-floor balcony and found a window screen lying on the victims' balcony. Gay told officers that the two intruders had on black masks and black gloves, and, though she did not see their faces, she believed "Joe," one of Rucker's longtime friends, might have been responsible. Law enforcement dusted the apartment's balcony door for prints and located a fingerprint that matched Harris' left index finger.

A few days later, Alexander informed law enforcement that Cunningham and Harris were involved in the victim's murder. The two men were subsequently arrested and held at the Clayton County jail. While there, both men made numerous incriminating statements to other individuals regarding their participation in the crimes. While incarcerated, Cunningham also

4

attempted to have Alexander killed in order to prevent him from testifying. At trial, the State introduced evidence via OCGA § 24-4-404 (b) of a prior armed robbery allegedly committed by both defendants.

1. Cunningham first argues that the evidence was insufficient to sustain his convictions. When evaluating the sufficiency of evidence, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013). Moreover, a "reviewing court must consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." (Citations and punctuation omitted.) Kemp v. State, 303 Ga. 385, 388 (810 SE2d 515) (2018).

Viewed in this manner, the evidence was sufficient to sustain Cunningham's convictions and sentences for malice murder, burglary,

aggravated assault of Gay, cruelty to children, criminal trespass, and the related weapons charges. However, as we did in Harris' appeal, see Harris v. State, 304 Ga. 276 (1) (818 SE2d 530) (2018), we find that the evidence was insufficient to support Cunningham's convictions and sentences for false imprisonment and his convictions and sentences for possessing a firearm during the commission of the false imprisonment of Gay and her two minor children.

"A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). Here, there is no evidence that Cunningham arrested, confined, or detained any of the victims. Indeed, the victims *chose* to barricade themselves and their children in their back bedroom and tried to stop Cunningham and his co-defendant from entering. Consequently, the evidence was insufficient to establish Cunningham's guilt beyond a reasonable doubt regarding the three counts of false imprisonment and the three counts of possession of a firearm during the commission of a false imprisonment, and his convictions and sentences for the same must be reversed. See Harris, 304 Ga. at 276 (1); Ward v. State, 304 Ga. App. 517 (1) (c) (696 SE2d 471) (2010).

6

2. Prior to trial, the State filed a notice of intent pursuant to OCGA § 24-4-404 (b) to introduce evidence of a prior home invasion and armed robbery allegedly committed by Cunningham and Harris. At a pre-trial hearing on the notice, the State made a proffer showing as follows. Two months prior to Rucker's murder, Rogers Glenn was at home with his girlfriend when Harris and a masked man (later identified as Cunningham) entered the residence. Both men were armed and held the victims at gunpoint. After Cunningham struck Glenn over the head, rendering him unconscious, Cunningham forced the girlfriend to perform oral sex on him at gunpoint. The men then stole wallets, cash, jewelry, and electronics from the home; the victims' wallets were later recovered from Cunningham's bedroom.

The State requested that this other acts evidence be admitted at trial in order to establish intent, motive, and plan. Cunningham objected. The trial court admitted the evidence for the purposes of demonstrating "intent, preparation and plan," concluding that the probative value of the other acts evidence was not substantially outweighed by undue prejudice. Cunningham asserts that the admission of this evidence at trial was error.

Assuming, without deciding, that the trial court's ruling was erroneous, based upon the strong evidence establishing Cunningham's guilt, including witness testimony, the many incriminating statements made by both defendants, and the evidence that Cunningham attempted to have the State's key witness, Keith Alexander, killed prior to trial, we conclude that it is highly probable that any error did not contribute to the jury's guilty verdict. See Timmons v. State, 302 Ga. 464 (2) (b) (807 SE2d 363) (2017); Boothe v. State, 293 Ga. 285 (2) (b) (745 SE2d 594) (2013).

3. Finally, Cunningham argues that his trial counsel was ineffective for failing to file an alibi notice prior to trial, and for failing to call Eric Todd as an alibi witness at trial. In order to establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "If the defendant fails to satisfy either prong of the Strickland test, this Court is not required to examine the other." Propst v. State, 299 Ga. 557, 565 (788 SE2d 484) (2016). "A court considering a claim of ineffective assistance must apply

8

a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." (Citation omitted.) Harrington v. Richter, 562 U. S. 86, 104 (131 SCt 770, 178 LE2d 624) (2011). "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) Wright v. State, 291 Ga. 869, 870 (734 SE2d 876) (2012). With these principles in mind, we review Cunningham's claim.

On March 28, 2017, the trial court held a hearing on Cunningham's motion for new trial as amended. There, trial counsel testified that, based upon his review of the evidence, the defense's theory at trial was that Cunningham was not present at the scene of the crime. Counsel recalled discussing the possibility of an alibi defense with Cunningham, but he did not recall Cunningham stating he had an alibi for the night of the crimes nor did he recall receiving any name or information regarding a potential alibi witness. Counsel testified that if he had been provided with the name of an alibi witness, he would

have interviewed that individual and determined whether that witness would have been a good fit for the defense's theory of the case.

Cunningham attempted to call Eric Todd as a witness at the March 28 hearing; however, Todd did not appear despite being properly subpoenaed by counsel. The hearing was continued in order to give counsel an opportunity to locate Todd and secure his appearance. A second hearing took place on April 14, 2017, and Todd, once again, failed to appear. At this time, the trial court attached a witness warrant to Todd's subpoena and continued the hearing. On June 6, 2017, Todd filed a motion to set aside the attachment, asserting he had no information about Cunningham's whereabouts on the day of the crimes. Then, on July 18, 2017, Todd finally appeared at a third hearing on Cunningham's motion and testified that he was with Cunningham during the time the crimes were committed. He denied ever speaking with trial counsel and admitted that he had previously stated that he had no information regarding an alibi defense. Cunningham and his mother, Jane, also testified at the third hearing, wherein they stated that they told trial counsel about Eric Todd as a potential alibi witness.

10

In its order denying Cunningham's motion for new trial, the court credited counsel's testimony over the testimony of Todd, Cunningham, and his mother, finding that trial counsel was not notified of the potential alibi witness. The court also concluded that, even if counsel had been told about Todd, because of the issues surrounding his credibility, Todd's testimony would not have produced a different result at trial.

Giving the proper deference to the trial court's factual findings and credibility determinations, we agree that Cunningham has failed to carry his burden under Strickland. See Escobar v. State, 279 Ga. 727 (5) (620 SE2d 812) (2005) (trial counsel cannot be deemed ineffective for failing to locate alibi witness whose existence was not brought to counsel's attention). Accordingly, Cunningham's claims of ineffective assistance of counsel fail.[4]

Judgment affirmed in part and reversed in part. All the Justices concur.

---

[4] And that's all she wrote.

Decided December 10, 2018.

Murder. Clayton Superior Court. Before Judge Simmons, Senior Judge.

Stanley W. Schoolcraft III, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.