305 Ga. 276
FINAL COPY

S18A1519. MILLER v. THE STATE.

PETERSON, Justice.

Frank Miller appeals his convictions for malice murder, two counts of aggravated assault, and two counts of false imprisonment in connection with the shooting death of his daughter, Colleen Miller Grant, and an attack on Grant's grandson, Sawyer Dockery.[1] Miller contests the sufficiency of the evidence to convict him of the aggravated assault of Dockery and both counts of false imprisonment. Miller also argues that his conviction for the aggravated assault of Grant should have merged with his conviction for the malice murder of Grant

---

[1] The crimes occurred on September 1, 2013. On October 4, 2013, a Union County grand jury indicted Miller for malice murder, felony murder predicated on aggravated assault with a deadly weapon, aggravated assault (family violence), aggravated assault, and two counts of false imprisonment. At trial in the summer of 2015, the jury found Miller guilty on all counts. The trial court sentenced him to life for malice murder and felony murder, twenty years, concurrent, on each aggravated assault, and ten years, concurrent, on each count of false imprisonment. Miller filed a motion for new trial on July 6, 2015, which was amended on October 16, 2017. On April 13, 2018, the trial court granted Miller relief in part, purporting to merge his sentence for felony murder into malice murder; the felony murder count was in fact vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Relief on all other counts was denied. Miller timely filed a notice of appeal on April 18, 2018. His appeal was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

and that the defective indictment violated his due process rights. We conclude that the challenge to the indictment was not preserved, his conviction for the aggravated assault of Grant does not merge with the malice murder conviction, and the evidence is sufficient to support all of Miller's convictions except the two counts of false imprisonment. As such, we reverse Miller's convictions for false imprisonment, and affirm on all other counts.

The trial evidence viewed in the light most favorable to the verdicts showed that on August 31, 2013, Dockery and Grant (Dockery's grandmother) went to the home of Miller, where they were staying. Upon arrival, Dockery entered the house while Grant stayed outside. Dockery encountered Miller, who was naked from the waist down and carrying a handgun. Miller threatened to kill Dockery, prompting Dockery to run out of the house to get Grant.

Grant and Dockery returned to the home, and Grant tried to reason with Miller, who was very drunk and belligerent. Miller grabbed Grant by the hair and punched her in the face multiple times. Afterward, Grant went upstairs to take a bath, and Dockery, who was scared, went upstairs to the guest bedroom and fell asleep.

Sometime after midnight, Grant went to wake up Dockery, was "freaking

out," and told him to get dressed. They then ran into Grant's room. Grant called 911, telling the dispatcher that police needed to hurry and that Miller had a gun. Grant and Dockery braced themselves against the bedroom door to keep it closed. Miller began banging on the door while Grant and Dockery struggled to keep it closed.

Miller then shot through the door multiple times. One bullet struck Dockery in the leg. Dockery, afraid of being shot again, retreated from the door, pulling Grant into the bedroom closet. Miller then entered the room asking, "Where are you, b**ch?" Grant told Dockery to remain hidden in the closet before exiting to confront Miller.

As soon as Grant left the closet, Miller shot her. As she lay on the floor, Miller reloaded his gun and shot her five more times. Miller asked something along the lines of, "Why'd you make me do this" or "Why did you push me this far[?]"

Meanwhile, Dockery retreated further into the closet and hid behind some hanging dresses, covering his lower body with shoes and a suitcase. Miller sat on Grant's bed, peering into the closet, trying to coax Dockery out. Dockery did not respond and did not move. Eventually, Miller left and went back downstairs,

and Dockery was able to sneak out of the house and meet the police outside.

While alone in an interrogation room after being taken into custody, Miller said something along the lines of, "I guess I shouldn't have shot her that last time through the head and brain."

1. Miller challenges the sufficiency of the evidence to convict him of aggravated assault against Dockery as charged and false imprisonment against both Grant and Dockery. We agree that the evidence was insufficient to find Miller guilty of false imprisonment, but conclude that the evidence is sufficient to sustain all of his other convictions.

It is not for this Court to resolve conflicts in evidence, determine the credibility of witnesses, weigh the evidence, or assess questions of justification; those matters are left firmly within the province of the jury. See OCGA § 24-6-620; Walker v. State, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014); Harris v. State, 279 Ga. 304, 306 (2) (612 SE2d 789) (2005). Instead, this Court must view the facts in the light most favorable to the verdict. Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

(a) Miller argues that he could not have falsely imprisoned Dockery and Grant in the bedroom because they both entered the room of their own volition.

4

We agree. "A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). At no point did Miller arrest, confine, or detain either Dockery or Grant. Rather, Dockery and Grant chose to flee into Grant's bedroom and barricade themselves there, trying to keep Miller out of the room. This will not sustain Miller's two convictions for false imprisonment, and we reverse these convictions. See Cunningham v. State, 304 Ga. 789, 792 (1) (822 SE2d 281) (2018) (evidence insufficient to sustain convictions for false imprisonment where the victims chose to barricade themselves and their children into a room to keep the perpetrators out); Harris v. State, 304 Ga. 276, 279 (1) (818 SE2d 530) (2018) (same).

(b) Miller contends that the inclusion of the word "knowingly" in the indictment for aggravated assault against Dockery renders the evidence insufficient to sustain his conviction. We disagree. When we review a challenge to the sufficiency of the evidence, we will affirm when "*any* rational trier of fact could have found *the essential elements of the crime* beyond a reasonable doubt." Jackson, 443 U. S. at 319 (III) (B) (emphasis added). The jury is empowered to find the existence of criminal intent based on the evidence.

5

OCGA § 16-2-6 ("A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.").

A conviction for aggravated assault with a deadly weapon requires proof of a simple assault, with the use of a deadly weapon (or an object that when used offensively is likely to result in serious bodily injury), and with general criminal intent. See OCGA § 16-5-21 (a) (2); see also Bishop v. State, 266 Ga. App. 129, 131 (2) (596 SE2d 674) (2004) (noting that "aggravated assault with a deadly weapon does not require a specific criminal intent"). Miller argues that the inclusion of the word "knowingly" in the indictment was a descriptive averment that changed the mens rea from general criminal intent to knowledge that he was assaulting Dockery. Even assuming this is true, the evidence is still sufficient to sustain Miller's conviction. The evidence viewed in the light most favorable to the verdict shows that Miller knew Dockery was in the bedroom. Thus, the evidence presented at trial was sufficient such that any rational juror could find beyond a reasonable doubt that Miller knowingly assaulted Dockery with a

6

deadly weapon by shooting at him through the bedroom door.[2]

(c) Although Miller does not challenge the sufficiency of the evidence as to malice murder or the aggravated assault against Grant, we have independently reviewed the record and conclude that, on these facts, a rational trier of fact could have found Miller guilty beyond a reasonable doubt of those crimes.

2. Miller argues that his conviction for aggravated assault against Grant should have been merged into his conviction for malice murder. We disagree. A defendant may not be "convicted of more than one crime if one crime is included in another[.]" Reddings v. State, 292 Ga. 364, 366 (2) (738 SE2d 49) (2013) (citations and punctuation omitted); OCGA § 16-1-7 (a) (1). "[W]here a victim suffers a series of injuries inflicted by a single assailant in rapid

---

[2] To the extent that Miller challenges the sufficiency of the aggravated assault charge in the indictment, argues that the trial court erred in giving a jury instruction regarding transferred intent, or that doing so resulted in a fatal variance, these separate claims of error have nothing to do with the sufficiency of the evidence and instead rely on Miller's challenge to the form of the indictment due to the inclusion of the word "knowingly." Miller's challenge to the sufficiency of the form of the indictment, along with all of the arguments relying upon it, is waived as it must have been raised as a special demurrer at least before trial. See OCGA § 17-7-113 ("All exceptions which go merely to the form of an indictment or accusation shall be made before trial."); OCGA § 17-7-110 ("All pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."); Palmer v. State, 282 Ga. 466, 468 (651 SE2d 86) (2007) ("[A]ll pretrial motions, including special demurrers, must be filed within ten days after arraignment.").

succession, each injury does not constitute a separate assault." <u>Reddings</u>, 292 Ga. at 366 (2). But separate convictions for aggravated assault and malice murder are appropriate "where there is evidence that a deliberate interval separated the infliction of an initial non-fatal injury from the infliction of a subsequent fatal injury." Id. at 367 (2) (citation and punctuation omitted).

The evidence shows that Grant and Dockery braced against the bedroom door as Miller tried to force his way into the room. Miller then shot through the door multiple times, hitting Dockery and forcing both to flee into the bedroom closet. The initial aggravated assault was complete at this time. After Miller entered the room, Grant came out of the closet and was immediately shot by Miller, who then shot her five more times. The initial aggravated assault was separated by a deliberate interval from the malice murder: the aggravated assault occurred when Miller shot several times through the bedroom door, and the malice murder occurred only after Grant fled into the bedroom closet, Miller entered the room, and Grant came out to confront him. The trial court did not err in entering convictions and sentences on both aggravated assault and malice murder.

3. Miller argues the indictment violated his due process rights because it

8

failed to give him notice of this deliberate interval theory. We disagree.

To satisfy due process, an indictment must put the defendant on notice of the crimes with which he is charged and against which he must defend. McCrary v. State, 252 Ga. 521, 524 (314 SE2d 662) (1984). Due process requires that the indictment contain all the essential elements of the crime. Lizana v. State, 287 Ga. 184, 185 (2) (695 SE2d 208) (2010). Here, the indictment tracked the language of the statute, included all essential elements of the offense, and was, therefore, definite enough to advise Miller of what he had to defend against. See Johnson v. State, 286 Ga. 432, 434 (687 SE2d 833) (2010).

To the extent that Miller argues that the indictment should have been more specific as to the timing in which the offenses were committed, such an argument amounts to a special demurrer. See State v. Layman, 279 Ga. 340, 340-341 (613 SE2d 639) (2005) ("Generally, an indictment which fails to allege a specific date on which the crime was committed is not perfect in form and is subject to a timely special demurrer." (citations and punctuation omitted)). Such an argument must be brought before trial, or it is waived. See OCGA § 17-7-113; OCGA § 17-7-110; Palmer v. State, 282 Ga. 466, 467-468 (651 SE2d 86) (2007). Because Miller failed to file a special demurrer, he has waived his right

to a perfect indictment. See <u>Stinson v. State</u>, 279 Ga. 177, 179-180 (2) (611

SE2d 52) (2005); <u>Palmer</u>, 282 Ga. at 467-468.

<u>Judgment affirmed in part and reversed in part. All the Justices concur.</u>

Decided February 18, 2019.

Murder. Union Superior Court. Before Judge Miller.

<u>Genevieve Holmes</u>, for appellant.

<u>W. Jeffrey Langley, District Attorney, Kelly R. Holloway, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General</u>, for appellee.