310 Ga. 453
FINAL COPY

S20A1309. HUGHES v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Lawrence B. Hughes appeals his convictions for the felony murder of Jamon Epps and related offenses, contending that the evidence was insufficient, that the trial court made certain evidentiary and charging errors, and that trial counsel was constitutionally ineffective.[1] For the reasons set forth

---

[1] On April 20, 2016, Hughes was indicted for felony murder predicated on aggravated assault (Count 1), felony murder predicated on possession of a firearm by a convicted felon (Count 2), possession of a firearm during the commission of a felony (Counts 3, 5, 7, 9), aggravated assault (Count 4), hijacking a motor vehicle (Count 6), armed robbery (Count 8), and possession of a firearm by a convicted felon (Count 10), in connection with the shooting death of Epps and the theft of Janie Geiger's automobile. At a jury trial on September 4 to 7, 2018, Hughes was acquitted of the Count 1 felony murder charge and its predicate felony, aggravated assault, but he was found guilty of the remaining counts. Thereafter, the trial court sentenced Hughes to consecutive sentences of life in prison without parole for felony murder and armed robbery; twenty years consecutive for hijacking a motor vehicle; and five years consecutive for each of the unlawful firearm possessions in Counts 3, 7, and 10. The trial court merged the remaining firearm possession counts (Counts 5 and 9). On September 20, 2018, Hughes filed a motion for new trial, which he later amended through new counsel. The trial court denied the motion for new trial as amended on April 9, 2020. Hughes filed a timely notice of appeal, and his case, submitted on the briefs, was docketed to the August 2020 term of this Court.

below, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence admitted at trial showed that, on June 25, 2015, Epps drove Hughes and others in a black SUV to the parking area outside a Chinese restaurant in Chatham County. Hughes, a convicted felon, was sitting behind Epps, and Hughes had a firearm in his possession. Outside the restaurant, Hughes's group, while still inside the SUV, exchanged gunfire with unknown individuals. During the gunfire, Epps was shot through the back of his neck and killed. After realizing Epps had been shot, Hughes exited the SUV and approached Janie Geiger, who was sitting in her car across the street. Hughes ordered Geiger to give him her vehicle while pointing what Geiger described as a "shotgun or rifle" at her. Geiger evacuated her vehicle, and Hughes drove it away from the scene.

Later, outside the Chinese restaurant, police found numerous pieces of dark tinted glass, eighteen shell casings, and leaked gasoline. Geiger's vehicle was later recovered on a nearby street, and Hughes's blood was found on the steering wheel and driver's door.

2

In addition, on the day after the shooting, law enforcement found the black SUV that had been driven by Epps at The Ponderosa Apartments, approximately half a mile from the restaurant. Epps's dead body was in the driver's seat. The SUV was riddled with bullet holes; the rear tinted window was shattered; and there was a trail of gasoline behind the vehicle. Hughes's fingerprints were discovered on two compact discs inside the SUV, as well as on a cell phone that was determined to belong to Hughes (as it contained several photos taken by Hughes in which Hughes was included). The compact discs were located in the back seat of the SUV, and Hughes's cell phone was located in a compartment of the passenger's door behind the driver's seat. Investigators also found three firearms — two pistols and a rifle — and a number of spent shell casings. They later determined that the shell casings had been fired from four different weapons, including the three found in the car. The remaining shell casings had been fired from a different rifle that was not recovered.

Epps died of a single gunshot wound to the back of his neck.

The medical examiner opined that, due to the irregular shape of the entry wound, the bullet struck an intermediate object before hitting Epps. This finding was consistent with the discovery of a hole caused by a bullet passing through the back of the driver's headrest. It was also consistent with observations made by Officers Timothy Powell and Jenna Rojas with regard to the origin and trajectory of the bullet that was fired from somewhere behind Epps.[2]

Evidence further showed that Hughes's cousin, Jason Grantham, spoke with Hughes several days after the shooting. Hughes admitted to Grantham that he had participated in the gunfight. Hughes explained that, before the gunfight began, Hughes had asked Epps "how he was gonna shoot that big gun in his lap," after which Hughes and Epps "switched guns." In addition, Hughes said that, after the shootout began, he reached forward, tapped Epps

---

[2] In a passing argument, Hughes complains that Officer Powell was not qualified as an expert to opine on this topic. Even if this were true, the same evidence was introduced through Officer Rojas, and Hughes makes no challenge to her testimony. See *Akhimie v. State*, 297 Ga. 801, 807 (3) (777 SE2d 683) (2015) (no showing of harm where testimony in question was cumulative of other admissible evidence).

on the shoulder, and discovered Epps was dead. Hughes then recounted that he exited the vehicle and "took a lady['s] car."

This evidence was sufficient to enable the jury to find Hughes guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).[3] And, though Hughes argues that some of the evidence was "speculative," it is the function of the jury to determine the weight of the evidence and the credibility of witnesses at trial. See, e.g., *Cox v. State*, 306 Ga. 736 (1) (832 SE2d 354) (2019).[4]

2. Hughes contends that the trial court erred by giving an

---

[3] In various sections of his brief, Hughes argues that his actions could not be considered the proximate cause of Epps's death. He is incorrect. The evidence presented at Hughes's trial supported the jury's finding that Hughes both possessed a firearm as a convicted felon and was at least a party to the shootout that foreseeably led to Epps's death. See, e.g., *Lebis v. State*, 302 Ga. 750, 753-759 (II) (B) (808 SE2d 724) (2017) (evidence was sufficient to find Lebis guilty of felony murder as a party to her husband's possession of a firearm as a convicted felon that proximately caused the death of a police officer).

[4] In his argument, Hughes conflates the standards for reviewing the constitutional sufficiency of the evidence and for reviewing the weight of the evidence for purposes of granting him a new trial. This Court does not review the weight of the evidence, as that consideration lies solely within the province of the jury at trial and, thereafter, the trial court in applying OCGA §§ 5-5-20 and 5-5-21.

incomplete charge on felony murder and proximate cause; failing to

re-charge the jury on proximate cause in response to questions from

the jury after deliberations began; and failing to charge the jury on

the defense of justification.[5] We disagree.

(a) With regard to the jury charges relating to felony murder

and proximate cause, Hughes made no objections. Therefore, the

claim that these charges were incomplete is subject to plain error

review on appeal. See *Guajardo v. State*, 290 Ga. 172, 175 (4) (718

SE2d 292) (2011). The test for plain error is comprised of four

prongs:

> First, there must be an error or defect — some sort of
> deviation from a legal rule — that has not been
> intentionally relinquished or abandoned, i.e.,
> affirmatively waived, by the appellant. Second, the legal
> error must be clear or obvious, rather than subject to
> reasonable dispute. Third, the error must have affected
> the appellant's substantial rights, which in the ordinary
> case means he must demonstrate that it affected the

---

[5] Hughes disjointedly includes within this enumeration an unrelated argument that, on the count of felony murder for which he was convicted, there was a fatal variance between the indictment and the evidence produced at trial. Hughes did not raise this issue in the trial court; therefore, it has been waived for purposes of appellate review. See *Eberhart v. State*, 307 Ga. 254, 262 (2) (a) n.7 (835 SE2d 192) (2019) (failure to raise a fatal variance issue in the trial court waives the issue for appeal).

outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Citation, punctuation and emphasis omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). Here, there was no clear or obvious error. The charges given by the trial court tracked the pattern jury instruction on felony murder and proximate cause, see Ga. Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 2.10.30 (2020),[6] and Hughes has not shown that the charges were

---

[6] The trial court instructed the jury:
In order for a homicide . . . to be done in the commission of one of these particular felonies, there must be some connection between the felony and the homicide. The homicide . . . must have been done in carrying out the unlawful act and not collateral to it. It's not enough that the homicide occurred soon or presently after the felony was attempted or committed. There must be such a legal relationship between the homicide and felony so as to cause you to find that the homicide occurred before the felony was at an end or before the attempt to avoid conviction or arrest for the felony. The felony must have a legal relationship to the homicide, be at least concurrent with it in part, and be part of it in an actual and material sense. The homicide is committed in the carrying out of a felony, when it is committed by the accused while engaged in the performance of any act required for the full execution of the felony.

7

either incorrect or incomplete. Furthermore, Hughes has failed to demonstrate that any purported error affected his substantial rights. Rather than attempting to make such a demonstration, Hughes again makes arguments relating to the sufficiency of the evidence against him. For example, Hughes claims that he acted in self-defense or that someone else was responsible for Epps's death.[7] As set forth in Division 1, however, the evidence was not only constitutionally sufficient to support Hughes's convictions, it was strong. Therefore, Hughes has not established plain error in connection with the trial court's charges on felony murder and proximate cause.

(b) With regard to Hughes's claim that the trial court failed to re-charge the jury on the issue of proximate cause after deliberations were underway, Hughes waived any error, even if error existed. The record shows that, after deliberations began, the jury sent out a note asking the following questions: "Count one and count two stated the

---

[7] As explained in Division 2 (c), infra, Hughes was not entitled to a charge on self-defense under the facts of this case.

felonies listed caused the death of [the victim] by shooting him. Does this mean that defendant simply shot [the victim]? The wording is unclear. In layman's terms what are the differences between count one and count two?" The trial court determined that the appropriate way to deal with these questions was to re-read the applicable counts of the indictment (which had also been sent out with the jury). Hughes did not object to the trial court's decisions; instead, he agreed that re-reading the indictment was the appropriate means to answer the jury's questions. By agreeing with the trial court, Hughes affirmatively waived his right to challenge the trial court's action. See, e.g., *Faust v. State*, 302 Ga. 211, 215 (3) (805 SE2d 826) (2017) (invited error waived any contention of plain error for review); *Hicks v. State*, 295 Ga. 268, 275 (2) (759 SE2d 509) (2014) (concluding that, because appellant expressly told the trial court that it should not answer the jury's question during deliberation, appellant invited the alleged error, and there was no plain error). See also *United States v. Fulford*, 267 F3d 1241, 1247 (II) (C) (3) (11th Cir. 2001) (holding that a defendant's explicit agreement with

a proposed jury instruction constituted invited error).

(c) Hughes argues that the trial court erred by denying his request for a charge on self-defense, a contention preserved for ordinary appellate review by a timely objection. Hughes maintains that he was entitled to this charge because there was some evidence that he fired his weapon in self-defense, after others outside the SUV began firing at him first. Hughes, however, was a convicted felon when the shooting occurred; thus, he was committing a felony by possessing a firearm even before the shootout began,[8] which precluded him from claiming that he acted in self-defense. See OCGA § 16-3-21 (b) (2); *Woodard v. State*, 296 Ga. 803, 808 (3) (771 SE2d 362) (2015). As Hughes was not entitled to claim self-defense, the trial court did not err by denying his request for such an instruction.

3. Finally, Hughes contends that his trial counsel rendered constitutionally ineffective assistance in a number of ways.

---

[8] Hughes's statement to Grantham indicates that he was in possession of a firearm prior to the gunfight, and there was no evidence presented that Hughes could have grabbed a gun only after the shooting started.

> To prevail on a claim of ineffective assistance of counsel, [Hughes] must prove both deficient performance and resulting prejudice. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, [Hughes] must show that his trial counsel performed in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. To establish prejudice, [Hughes] must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. We need not address both components of this test if [Hughes] has not proved one of them. See *Walker v. State*, 301 Ga. 482, 489 (801 SE2d 804) (2017).

*Watson v. State*, 303 Ga. 758, 761-762 (2) (d) (814 SE2d 396) (2018).

With extremely limited arguments, Hughes contends that trial counsel performed deficiently by failing to object to a laundry list of items of evidence, including shell casings recovered from the crime scenes, broken car-window glass, autopsy photos, photos of Epps's blood, and the audiotape of Geiger's 911 call, on the grounds that these items were "irrelevant and prejudicial." Hughes is incorrect on all counts.

OCGA § 24-4-401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of

11

consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded under OCGA § 24-4-403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Here, the shell casings, car-window glass, 911 call, and photos of Epps's blood were all relevant in demonstrating the circumstances of the shooting — specifically, the existence, nature, and location of the gunfight that led to Epps's death. Hughes contends that the evidence has no nexus to him; however, there was ample evidence that Hughes participated in the gunfight that forms the basis for his convictions. The evidence listed by Hughes was relevant to the nature and circumstances of the gunfight, and Hughes has not made any showing that he was unfairly prejudiced by the admission of this evidence, especially in light of Hughes's admission that he was involved.

Moreover, with regard to the autopsy photos, "photographic evidence that fairly and accurately depicts a body or crime scene and is offered for a relevant purpose is not generally inadmissible under OCGA § 24-4-403 merely because it is gruesome." (Citation and punctuation omitted.) *Calhoun v. State*, 308 Ga. 146, 152 (2) (c) (i) (839 SE2d 612) (2020). Here,

> [t]he challenged photographs do not depict the victim's autopsy incisions, and they are not especially gory or gruesome in the context of autopsy photographs in a murder case; furthermore, they were relevant to show the nature and location of the victim's injuries, which corroborated the State's evidence of the circumstances of the killing.

*Pike v. State*, 302 Ga. 795, 799-800 (3) (809 SE2d 756) (2018).

With regard to the 911 call made by Geiger, Hughes makes an additional argument that trial counsel should have objected to this evidence because the call was not properly authenticated. This argument is meritless. Here, the State introduced the 911 tape through a detective who testified that he had listened to the 911 call made by Geiger beforehand, and that he recognized Geiger's voice because he had previously interviewed her. This was sufficient

13

authentication. See OCGA § 24-9-901 (b) (5) (authentication may be done by "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker").

For all of the reasons set forth above, Hughes has failed to show that his trial counsel was constitutionally ineffective.

*Judgment affirmed. All the Justices concur, except Warren, J., not participating.*

Decided November 16, 2020.

Murder. Chatham Superior Court. Before Judge Bass.
*Kimberly L. Copeland*, for appellant.
*Meg E. Heap, District Attorney, Bradley R. Thompson, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.