311 Ga. 626
FINAL COPY

S21A0132. JACKSON v. THE STATE.

LAGRUA, Justice.

Appellant Philemon Shark Jackson was convicted of malice murder and other crimes in connection with the shooting death of Clyde Weeks. On appeal, Appellant contends that the evidence was legally insufficient to support his convictions; that the trial court erred in allowing an unredacted 911 call containing hearsay testimony into evidence; and that the trial court erred in refusing to charge the jury on sympathy, despite a request by the defense.[1] For

[1] The crimes occurred on February 15, 2017. In September 2017, a Liberty County grand jury indicted Appellant for malice murder, felony murder, three counts of aggravated assault, and three counts of possession of a firearm during the commission of a felony in connection with Appellant's crimes against Weeks, Garrett Champion, and Vincent Smith. Appellant was tried in July 2018, and a jury found him guilty of malice murder (as to Weeks), two counts of aggravated assault (as to Weeks and Champion), and two counts of possession of a firearm during the commission of a felony (as to Weeks and Champion). The jury found Appellant not guilty of the remaining charges of felony murder (as to Weeks) and aggravated assault and possession of a firearm during the commission of a felony (as to Smith). The trial court sentenced Appellant to serve life in prison for the malice murder count, twenty years in prison to run concurrent to the aggravated assault count (as to Champion), and consecutive five-year terms for each of the two firearm

1

the reasons set forth below, we affirm.

1.    Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following.  On February 15, 2017, at around 5:00 p.m., Weeks went to visit his friend Elijah Ferguson, who lived in Hinesville with his mother, Cynthia Williams.  Weeks rode to Ferguson's house with two other friends, Garrett Champion and Vincent Smith, in Champion's car.  After arriving and backing into the driveway, Weeks, Champion, and Smith saw Appellant exit a house across the street and also noticed Appellant's car, a blue Dodge Dart, parked nearby.  Around this time, Ferguson came out of his house.  According to Champion, he then summoned Appellant over because Appellant had tried to rob Champion a few months earlier, and Champion wanted to talk about the incident.  Appellant walked over to Champion's car.  According

---

possession counts.  The other aggravated assault count merged for sentencing purposes into the malice murder count.  Appellant filed a timely motion for new trial on July 23, 2018, which he amended on June 17, 2019.  On July 15, 2019, the trial court held an evidentiary hearing and denied Appellant's motion in open court.  On December 23, 2019, the trial court issued a written order, denying the motion for new trial.  Appellant filed a timely notice of appeal to this Court on August 1, 2019, and the case was docketed to this Court's term beginning in December 2020 and submitted for a decision on the briefs.

2

to Champion and Smith, when Appellant approached, Champion asked if Appellant remembered him, and Appellant pulled a small semi-automatic pistol[2] out of his pants and aimed the gun at Champion's head, asking, "[W]hy should I know you?"  Champion then accused Appellant of trying to rob him, and Appellant asked "what [Champion] was going to do about it."  Weeks and Smith tried to de-escalate the situation, and Weeks said to Appellant, "[G]o put the gun up and let's just fight in the street."  Appellant went back to his car and put the gun inside the vehicle.  Weeks and Appellant then engaged in a fistfight in the cul-de-sac by Ferguson's house.  After losing the fight, Appellant returned to his car, at which point Champion and Smith shouted, "[H]e's going for the gun!"  Weeks told them to run, and Weeks, Champion, and Smith started running away toward the back of Ferguson's house.  While running, Champion and Smith heard multiple gunshots behind them.  Smith

---

[2] At trial, Smith testified that Appellant's gun looked like a .22-caliber, but on cross-examination, he admitted that he "didn't know exactly what the gun was," but "everyone else [was] saying it was like a .22."

then heard what sounded like Appellant's car leaving the neighborhood, and Champion saw a blue Dodge Dart "flying down the road." Champion and Smith then came back around the side of Ferguson's house and saw Weeks lying on the ground between Ferguson's yard and the neighbor's yard, having been shot several times.

Meanwhile, Ferguson's mother, Williams, was inside the house. When Champion's car pulled into the driveway around 5:00 p.m., Williams asked Ferguson to tell Champion to leave. Ferguson went outside, but a few minutes later, he ran back inside the house, telling Williams there was a fight and Appellant had a gun. Williams looked outside and saw Weeks and Appellant "boxing" in the cul-de-sac. Ferguson tried to go back outside, but Williams stood in front of the door to block his exit. Williams then heard a "gun go off," firing "at least three, maybe three or four" times. She did not see who fired the weapon because she was "tussling" with Ferguson at the time, attempting to keep him inside the house. Right after hearing the gunshots, at approximately 5:25 p.m., Williams called

4

911. While Williams was on the phone with the 911 operator, she saw Weeks lying on the ground on his back beside her car, trying to breathe. During the 911 call, Williams stated that she had heard three gunshots and "somebody got shot" in front of her house. Williams asked for an ambulance and provided Weeks's name and age. The 911 operator asked who did it, and Williams asked Ferguson the same question. Ferguson responded, "Philemon." The 911 operator then asked if Williams had a description "to help the police out," and Williams asked Ferguson, "Do you have a description of who did this?" Ferguson again responded, "Philemon." Williams told the 911 operator, "He, they know who did it, Philemon."

John O'Brock, a neighbor who lived one house over, heard four or five gunshots between 5:00 and 5:30 p.m. He looked out the window and saw a blue Dodge Dart driving away, slowly at first and then speeding down the street.

At approximately 5:30 p.m., police officers arrived at the scene of the shooting. They found Weeks, who was still alive, lying on his

5

back in the side yard of Ferguson's house. Champion was attending to Weeks, holding a makeshift compress against his abdomen to try to stop the bleeding. Emergency medical personnel soon arrived and transported Weeks to the hospital. Upon Weeks's arrival at the hospital, he was pronounced dead. The medical examiner determined that the cause of death was internal injuries from a gunshot wound to the back.

Police officers spoke to several witnesses, including Champion, Smith, Ferguson, and O'Brock, at the crime scene. Based upon these statements, officers went to Appellant's residence that night. Appellant was detained and taken to the police department to be interviewed. Appellant agreed to waive his *Miranda*[3] rights and gave a statement to police officers. During the interview, Appellant stated that he did not know about the shooting, had been with his mother in Savannah all day, and did not return to Hinesville until about 4:45 or 5:00 p.m. Appellant denied being anywhere near Ferguson's house or the surrounding neighborhood that day and

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

stated that after he returned from Savannah, he did not leave his home again. The police noted that Appellant had a bruise under his right eye, and when asked about it, Appellant stated that it happened a week or so earlier. At the conclusion of the interview, Appellant was arrested.

The next day, February 16, police officers returned to the scene and found a .22-caliber shell casing in the yard next to Ferguson's house, about ten feet from where Weeks was shot. Police officers also obtained a video recording from a security camera located on a house nearby. The recording showed a blue Dodge Dart, matching the description of Appellant's vehicle, driving into the neighborhood toward the cul-de-sac at approximately 5:19 p.m. on February 15. Six minutes later, the recording showed the same blue Dodge Dart leaving the neighborhood. After obtaining search warrants, police officers went to Appellant's residence to photograph and search Appellant's vehicle. Appellant's vehicle matched the vehicle shown in the video recording because, among other similarities, both had a broken right tail light. Police officers also recovered a cell phone

7

registered to Appellant inside the car. The cell phone records showed that Appellant's phone transmitted signals exclusively in Hinesville throughout the day of February 15, demonstrating that Appellant did not travel to Savannah.

2. Appellant contends that the evidence presented at trial was insufficient to support his convictions under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), because the only person who identified Appellant as the shooter was Ferguson, who was not outside when the shooting occurred and disappeared soon after the shooting.[4] Appellant also asserts that Ferguson's statements were hearsay and were admitted over his objection at trial (which will be addressed in Division 3 below).

When evaluating challenges to the sufficiency of the evidence as a matter of constitutional due process, "we view the evidence

---

[4] At trial, Williams, Ferguson's mother, testified that Ferguson left her house shortly after the shooting occurred, and she did not have contact with him for several months. Additionally, neither party could locate Ferguson prior to trial.

presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Boyd v. State*, 306 Ga. 204, 207 (1) (830 SE2d 160) (2019) (citing *Jackson*, 443 U.S. at 319, and *Jones v. State*, 304 Ga. 594, 598 (2) (820 SE2d 696) (2018)). "It is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses." *Smith v. State*, 280 Ga. 161, 162 (1) (625 SE2d 766) (2006) (citation and punctuation omitted). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Harris v. State*, 304 Ga. 276, 278 (1) (818 SE2d 530) (2018) (citation and punctuation omitted). Thus, when we consider the sufficiency of evidence, we "consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." *Dublin v. State*, 302 Ga. 60, 67-68 (5) (805 SE2d 27) (2017). Pursuant to the standard set forth in *Jackson v. Virginia*, we

conclude that the evidence was sufficient for a jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson*, 443 U.S. at 319.

Appellant further contends that all of the evidence presented by the State was circumstantial, with the exception of the hearsay testimony of Ferguson. See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

> Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

*Smith*, 280 Ga. at 162 (1) (citations and punctuation omitted) (holding that the evidence, which included statements from several witnesses who saw the defendant with a gun prior to the shooting and then heard gunshots fired from the location where the victim's body was ultimately found, was sufficient to support the jury's

10

finding of guilt). Moreover, if there is any direct evidence presented by the State, the circumstantial evidence statute does not apply to a sufficiency analysis. See OCGA § 24-14-6. See also *Jackson v. State*, 310 Ga. 224, 228 (2) (b) (850 SE2d 131) (2020).

In this case, the evidence against Appellant was not wholly circumstantial, as the State presented direct evidence in the form of Ferguson's statements during the 911 call, identifying Appellant as the person who shot Weeks. However, even if this were a wholly circumstantial case, the evidence was sufficient to authorize the jury to "exclude every other reasonable hypothesis save that of . . . guilt[.]" OCGA § 24-14-6. This evidence included the testimony of several witnesses who saw Appellant with a handgun in the location where the shooting occurred on February 15; saw Appellant's blue Dodge Dart parked nearby; saw Appellant and Weeks in a fistfight just before hearing gunshots; and saw a blue Dodge Dart speeding out of the neighborhood immediately after Weeks was shot. A video recording from a neighbor's home security camera also established that Appellant's car was in the neighborhood prior to the shooting

11

and left the neighborhood immediately afterward. In addition, Appellant's cell phone records confirmed that he was in Hinesville the entire day of the shooting, undermining his alibi. Thus, this enumeration of error fails.

3. Appellant contends that the trial court erred in allowing, over objection, the recording of Williams's 911 call to be played in its entirety during trial. We disagree.

Prior to trial, Appellant filed a motion in limine seeking to exclude certain portions of the 911 recording. Specifically, Appellant objected to the admission of the statements Ferguson made during the 911 call in response to Williams's questions from the 911 operator because Ferguson was not available to testify at trial.[5] The State argued that Ferguson's statements were admissible under the hearsay exceptions for excited utterances and present sense impressions. See OCGA § 24-8-803 (1) and (2). The trial court denied Appellant's motion, ruling that it would admit the 911

_____

[5] Ferguson's whereabouts were unknown when the trial began in July 2018, and the trial court found Ferguson was unavailable to testify under OCGA § 24-8-804 (a) (5).

12

recording in its entirety because Ferguson's statements were admissible under a hearsay exception, without specifying which exception applied.

Subsequently, in the trial court's order denying Appellant's motion for new trial, the court ruled that Ferguson's statements during the 911 call were admissible under the hearsay exceptions for excited utterances and present sense impressions in OCGA § 24-8-803 (1) and (2).

OCGA § 24-8-803 (1) and (2) provide:

> The following shall not be excluded by the hearsay rule, even though the declarant is available as a witness:
> (1) **Present sense impression**. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter;
> (2) **Excited utterance**. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[.]

Although Appellant raised both hearsay and Confrontation Clause claims in his motion for new trial, he raises only hearsay arguments on appeal, and thus, we address only those arguments.

Appellant contends that the trial court erred in finding that the statements made by Ferguson during the 911 call were admissible under either the present sense impression or excited utterance hearsay exceptions. Specifically, Appellant asserts that Ferguson's statements could not constitute a present sense impression because Ferguson was not outside when the shooting took place, and he could not have witnessed or "personally perceived" the shooting. Appellant further asserts that Ferguson's statements were not admissible as excited utterances because no circumstances existed to suggest that any of the statements Ferguson made to Williams were excited or spontaneous, and there was no indication that Ferguson was nervous, excited, in shock, or in a distraught state of mind so as to render him incapable of normal reflective thought. On this basis, Appellant asserts that Ferguson's statements were inadmissible hearsay and should have been redacted from the 911 call, and the trial court erred in failing to redact them, resulting in harm to Appellant. We conclude that the trial court did not abuse its discretion in admitting the 911 recording into evidence at trial

14

under the excited utterance exception. See *McCord v. State*, 305 Ga. 318, 324 (2) (a) (ii) (825 SE2d 122) (2019).

"The excited utterance exception provides that '(a) statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition' shall not be excluded by the hearsay rule." *Atkins v. State*, 310 Ga. 246, 250 (2) (850 SE2d 103) (2020) (quoting OCGA § 24-8-803 (2)).

> The basis for the excited utterance exception to the hearsay rule is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous.

Id. (citation and punctuation omitted.) "Whether a hearsay statement was an excited utterance is determined by the totality of the circumstances," and in this regard, "[t]he critical inquiry is whether the declarant is still in a state of excitement resulting from that event when the declaration is made." Id. (citation and punctuation omitted).

15

In this case, the trial court did not abuse its discretion in determining that Ferguson's statements during the 911 call were admissible under the excited utterance hearsay exception. The statements Ferguson made during the 911 call identifying Appellant as the shooter related "to a startling event or condition" — namely, the shooting of his friend Weeks, and these statements were made moments after gunshots were heard — a circumstance providing "sufficient assurance" that the statements were "trustworthy." OCGA § 24-8-803 (2). See *Atkins*, 310 Ga. at 250 (2). Accordingly, we conclude that the trial court did not abuse its discretion in admitting the entire 911 recording at trial.

4. Appellant contends that the trial court abused its discretion in refusing to charge the jury on sympathy. Appellant asserts that he requested the sympathy charge during the charge conference; the trial court advised that it did not intend to give this charge; and Appellant objected after the final charge was given, preserving the issue for review. We conclude this contention is without merit.

16

The decision over whether to give a cautionary charge to the jurors, informing them that they should not be influenced by sympathy or prejudice in reaching a verdict, is a matter generally addressed to the sound discretion of the trial judge. Cautionary instructions are not favored since in most instances they are productive of confusion and tend to restrict the jury's untrammeled consideration of the case. Where nothing in the record indicates that any improper circumstance was injected into the case, and the charge of the court fully and accurately instructed the jury on the issues involved, a new trial will not be granted because of the refusal of the court to give a cautionary request.

*Fincher v. State*, 289 Ga. App. 64, 68 (3) (656 SE2d 216) (2007) (citations and punctuation omitted).

Given that Appellant failed to point to any specific evidence in the record or to any incidents that arose during trial to support giving the requested cautionary sympathy charge, we cannot say that the trial court abused its discretion in declining to give the cautionary charge Appellant requested. See *Favors v. State*, 305 Ga. 366, 369-370 (3) (825 SE2d 164) (2019). Accordingly, this final enumeration of error fails.

*Judgment affirmed. All the Justices concur.*

17

Decided June 1, 2021.

Murder. Liberty Superior Court. Before Judge Russell.

*Richard M. Darden*, for appellant.

*Tom Durden, District Attorney, Melissa L. Poole, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.