**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 14, 2022**

# In the Court of Appeals of Georgia

A21A1597. KAMUSOKO v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Christopher Kamusoko guilty of hijacking a motor vehicle, armed robbery, attempted armed robbery, and obstruction of an officer. Kamusoko filed a motion for a new trial, which he amended, and the trial court denied the motion. He appeals, arguing that (1) the evidence was insufficient to support his convictions, (2) the trial court erred in admitting into evidence police dispatch reports, (3) his conviction for armed robbery should have been vacated, (4) the trial court erred in sentencing him for attempted armed robbery, and (5) he received ineffective assistance of counsel. For the following reasons, we affirm Kamusoko's convictions and sentences.

1. The standard of review regarding the sufficiency of the evidence is well settled:

> When evaluating challenges to the sufficiency of the evidence, we view the evidence presented at trial in the light most favorable to the jury's verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts, and we do not reweigh the evidence. Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Clark v. State*, 309 Ga. 473, 477 (847 SE2d 364) (2020) (citations and punctuation omitted).

Viewed in that light, the evidence shows that at approximately 10:30 a.m. on September 15, 2016, a black man wearing a studded blue jean vest, blue jean pants, and a hat knocked on J. C. Sims's door. After a brief exchange, Sims watched as the man walked across the street to Darrell Ellison's house. Sims observed Ellison drive up to his house and open his car door, saw the man who had just walked across the

2

street approach Ellison from behind while pointing "a shiny object" at him, and watched Ellison run from the man, leaving his car door open. Sims called 911, and a recording of the call was played for the jury. Police arrived approximately ten minutes after the 911 call.

Ellison testified that as he was leaving his home on September 15, 2016, a man wearing jeans, a cut-off jacket, and a red hat attempted to flag him down, but Ellison ignored him. Approximately fifteen minutes later, Ellison returned to his house and saw the same man talking to his neighbor. The man then walked across the street and asked Ellison for a cigarette while Ellison was sitting in his car. Ellison said he did not have any, and the man left; however, as Ellison was getting out of his car, the man came up behind him and said, "Give it up . . . you know what it is." The man pointed a shiny silver pistol at Ellison's chest, and Ellison ran to a neighbor's house. He later saw the man run down the road. Ellison called 911, and a recording of his call also was played for the jury.

Antonio Myke testified that, as he was driving his grey Kia Sorento SUV from his home that same morning, he stopped to talk to a neighbor, and a man approached them, pulled out two guns, one of which was silver, and pointed them at Myke and his neighbor. According to Myke, he exited his SUV, and the man got in the vehicle,

3

"pressed the gas all the way down[,]" and "took off like crazy." After the man sped off, Myke heard a "bang" from the direction where the assailant had driven. Myke called 911, and the recording of that call was played for the jury. Police arrived within ten minutes, and Myke gave them a description of his SUV.

A detective with the DeKalb County Police Department at the time of these incidents testified that as he responded to the scene of the carjacking at approximately 11:30 a.m., he approached a silver Kia SUV with its tailgate up and two flat front tires. . The detective identified the area where the incidents occurred for the jury, noting that the SUV was less than a mile from Sims's and Ellison's houses. The SUV was traveling slowly, and the detective thought it was odd. As the detective drove around the SUV, he glanced at the driver and observed a black male with a red hat and a jean vest. The detective recalled that the suspect of the alleged robbery was a black male with a red hat and a jean vest and the vehicle that was taken was a silver Kia SUV.

When the driver of the SUV noticed the detective, he abandoned the SUV and ran away. The detective identified himself as a law enforcement officer and gave the suspect multiple oral commands to stop, but the suspect looked back at the detective and continued to run, jumping a fence and running across a field. The detective

4

chased the suspect for approximately a quarter of a mile. At some point, Chris Starnes and Steve Swindle, who were working in the vicinity, joined the chase. Swindle chased the suspect over another fence and into thick bushes, while the detective and Starnes drove in Starnes's car to look for Swindle and the suspect. When the detective could not locate the suspect, he circled back to retrieve the suspect's red baseball cap, which had fallen off during the chase. Approximately five minutes later, the detective was told that officers had apprehended someone, and he identified the man who was apprehended as the same man who was driving the SUV and ran from him.

Starnes testified that he and Swindle were working on a construction site when they saw an officer chasing a young, black male. Swindle ran after the suspect, and Starnes drove the officer to look for the suspect. When they did not find the suspect, Starnes dropped off the officer at the construction site, and the officer walked back to his patrol car. Shortly thereafter, Starnes heard Swindle screaming his name and followed the voice for about 30 yards. Swindle had the suspect pinned down and told Starnes to remove a pistol from the suspect's pants, which he did. Starnes then called 911, and police arrived within five minutes.

An officer with the DeKalb County Police Department testified that as she responded to the armed robbery call, Starnes flagged her down, explaining that his

friend had the suspect pinned down in the shrubbery. The officer took the suspect into custody at 11:49 a.m. The officer noticed a pistol near the suspect, and a second gun was found in the suspect's front pocket.

Police searched the SUV and located a phone that did not belong to Myke. A search of the phone revealed two photographs showing an individual wearing the studded jean vest and red hat worn by Kamusoko. Those images were introduced into evidence at trial.

The State also introduced into evidence a jean vest, a red hat with "23s" on it, two guns, photographs of the abandoned SUV, and a photograph of the individual who abandoned the SUV and fled from the detective. Although Sims, Ellison, and Myke were unable to identify the assailant, they, along with the detective, the DeKalb County officer, and Starnes, identified the assailant's clothing, guns, and other items introduced into evidence by the State. For example, Sims and Ellison identified the jean vest introduced by the State as the same one the man in their neighborhood wore on September 15, 2016, The detective identified the vest as the one worn by the suspect both when he fled and when he later was apprehended, and Starnes identified the jean vest as the one worn by the suspect he helped apprehend. Ellison identified the red hat with "23s" on it, introduced by the State, as the one worn by the assailant

6

who approached him, and the detective identified the hat as the one that fell off the suspect who fled. In addition, Ellison identified the silver pistol introduced by the State as the one the assailant pointed at him, Myke identified both the silver pistol and the second gun introduced by the State as the ones the assailant pointed at him, and the DeKalb County officer identified both guns as the ones she recovered from Kamusoko. Myke also identified pictures of the recovered vehicle as the SUV stolen from him at gunpoint, and the detective identified the same photographs as the SUV he encountered on his way to the carjacking site. The detective also identified a photograph as the suspect who was driving the SUV and subsequently was apprehended.

At trial, Kamusoko admitted by stipulation that the jean vest, red hat, two handguns, and cell phone belonged to him. Defense counsel suggested during his closing argument that Kamusoko had gotten into the SUV after someone else stole it, and he ran from police because he knew it was illegal to take possession of a stolen vehicle.

The jury found Kamusoko guilty of hijacking a motor vehicle, armed robbery, attempted armed robbery, and obstruction of an officer. Kamusoko appeals following the denial of his motion for a new trial.

7

On appeal, Kamusoko argues that his convictions must be reversed because the circumstantial evidence was insufficient to identify him as the perpetrator of the carjacking and attempted armed robbery.[1] Specifically, he asserts that none of the eyewitnesses, including the two victims, identified him as the perpetrator even though the crimes were committed in broad daylight at close range. In addition, Kamusoko contends that the alternative hypothesis presented by his defense counsel – that Kamusoko got into the SUV after someone else stole it and ran from police because he knew it was illegal to take possession of a stolen vehicle – was reasonable, and, therefore, the State failed to meet its burden of excluding every other reasonable hypothesis except his guilt. Pretermitting whether the evidence presented in this case was entirely circumstantial, as argued by Kamusoko, we find that it was sufficient to support his convictions.

> [T]he fact that the evidence of guilt was circumstantial does not render it insufficient. It is true that to warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. OCGA § 24-14-6. But

---

[1] Kamusoko essentially has abandoned any challenge he may have to the obstruction conviction, as he does not dispute that he ran from officers after he was found in the stolen SUV.

we have made clear that not every hypothesis is reasonable, so only reasonable hypotheses must be excluded. In other words, the evidence need not exclude every conceivable inference or hypothesis – only those that are reasonable, and it is principally for the jury to determine whether an alternative hypothesis is reasonable.

*Clark*, 309 Ga. at 477-478 (citations and punctuation omitted).

Here, the evidence presented at trial and outlined above was more than sufficient for a rational trier of fact to find Kamusoko guilty beyond a reasonable doubt of the crimes for which he was convicted. It is undisputed that Kamusoko was observed in the SUV hijacked minutes earlier and fled from police when he saw the detective. This Court previously has concluded that possession of a recently stolen car and flight are circumstantial evidence of guilt. See *Shaheed v. State*, 245 Ga. App. 754, 754-755 (1) (538 SE2d 823) (2000). Moreover, although Kamusoko argues that his trial counsel offered a reasonable alternative hypothesis for his presence in the stolen car and his flight from police, this hypothesis does not account for the fact that Sims, Ellison, and Myke identified the articles of clothing worn by and guns possessed by Kamusoko at the time he was taken into custody as the same as those worn and possessed by their assailant prior to Myke's SUV being stolen.

9

Under the circumstances of this case, it was for the jury to determine the credibility of the witnesses, resolve any conflicts or inconsistencies in the evidence, examine the time line of events, and decide whether the defense theory that Kamusoko got into the SUV after someone else stole it and ran from police because he knew it was illegal to take possession of a stolen vehicle was reasonable. See *Clark*, 309 Ga. at 478. Here, the evidence presented at trial was legally sufficient to exclude every reasonable hypothesis other than Kamusoko's guilt. See *Carter v. State*, 305 Ga. 863, 868 (2) (828 SE2d 317) (2019) ("Where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law.") (citation and punctuation omitted). Accordingly, this claim of error presents no basis for reversal.

2. Kamusoko asserts that the trial court erred in denying his motion in limine seeking the exclusion of three police dispatch reports (known as CAD reports).[2] According to Kamusoko, the CAD reports included "who said what to who[m], and

---

[2] CAD stands for "Computer Aided Dispatch." See *Francis v. State*, 287 Ga. App. 428, 429 (651 SE2d 779) (2007). It is a dispatch report showing all entries recorded about a police call. See *Sirmans v. State*, 301 Ga. App. 756, 758 (3) (688 SE2d 669) (2009).

. . . [what] was said to the 911 operators," and the State failed to establish that the CAD reports were admissible under any exception to the hearsay rule. Kamusoko also argues that the CAD reports were not relevant. "A trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." *Atkins v. State*, 310 Ga. 246, 250 (2) (850 SE2d 103) (2020) (citation and punctuation omitted). We find no abuse of discretion in the admission of the CAD reports in this case.

(a) *Hearsay*. We turn first to Kamusoko's argument that the CAD reports were inadmissible because they contained hearsay. It is undisputed that the CAD reports in this case included statements made by the victims, witnesses, and officers to the 911 dispatchers. However, we conclude that the trial court did not abuse its discretion in admitting the CAD reports into evidence at trial under the excited utterance exception.[3] See *Jackson v. State*, 311 Ga. 626, 632 (3) (859 SE2d 46) (2021).

---

[3] Kamusoko makes no distinction between any particular statements or declarants and, therefore, has abandoned any challenges he may have regarding particular statements or declarants. See generally *Hunt v. State*, 336 Ga. App. 821, 829 (2) (b) (783 SE2d 456) (2016) (there is nothing for this Court to review where the appellant failed to identify precisely what statements he challenged). In addition, although Kamusoko mentions in passing that "whatever was said to the 911 operators was filtered through people who did not testify at trial," he fails to include either citation to authority or meaningful legal argument that the CAD reports were inadmissible because the 911 operators or other persons writing down the declarants'

11

The excited utterance exception provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" shall not be excluded by the hearsay rule. OCGA § 24-8-803 (2).

> The basis for the excited utterance exception to the hearsay rule is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous. Whether a hearsay statement was an excited utterance is determined by the totality of the circumstances, and in this regard, the critical inquiry is whether the declarant is still in a state of excitement resulting from that event when the declaration is made.

*Jackson*, 311 Ga. at 632 (3) (citations and punctuation omitted); see id. at 633 (3) (911 recording was admissible under the excited utterance exception because the

---

statements did not testify at trial. He, therefore, has abandoned appellate review of any challenge to the CAD reports on this ground. See *Huerta-Ramirez v. State*, 357 Ga. App. 123, 128 (1), n. 4 (850 SE2d 218) (2020) (allegation of error deemed abandoned due to failure to include citations to authority or meaningful legal argument); *Jones v. State*, 339 Ga. App. 95, 105 (5) (791 SE2d 625) (2016) (contention deemed abandoned due to failure to provide citations to the record and legal authorities).

12

statements made during the call related to a startling event or condition and were made moments after gunshots were fired – a circumstance providing sufficient assurance that the statements were trustworthy).

In this case, the CAD reports detail facts provided to dispatch personnel by the witnesses, victims, and officers attempting to apprehend the suspect responsible for several offenses in the same vicinity around the same time. The statements made during the 911 calls or by officers reporting to dispatch personnel – and detailed in the CAD reports – were related to a startling event or condition – the offenses committed by the assailant – and the statements were made moments after or in close proximity to the time of the offenses – indicating a sufficient assurance that the statements were trustworthy. See *Jackson*, 311 Ga. at 632-633 (3). "Given that the statements [in the CAD reports] were admissible as excited utterances, [Kamusoko] has not shown that the trial court erred in admitting [the reports]" over his hearsay objection. *McCord v. State*, 305 Ga. 318, 325 (2) (a) (ii) (825 SE2d 122) (2019); see also *Jackson*, 311 Ga. at 632 (3).

(b) *Relevance*. In addition to his hearsay argument, Kamusoko asserts that the CAD reports should not have been admitted into evidence because they were not relevant. We disagree with this assertion.

13

OCGA § 24-4-401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." It is well settled that "[a]ll relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by law or by other rules." OCGA § 24-4-402. "Decisions regarding relevance are committed to the sound discretion of the trial court[.]" *Morgan v. State*, 307 Ga. 889, 894 (3) (838 SE2d 878) (2020) (citation and punctuation omitted).

Here, the trial court found that the reports were relevant to show the time line of how long it took to locate the suspect insofar as it rebutted defense counsel's opening statement regarding the amount of time that passed between the robbery and Kamusoko being spotted.[4] In addition, although Kamusoko argues that the CAD reports were not admissible to explain the officers' conduct, the reports in this case were relevant in demonstrating the circumstances of the offenses – specifically, the existence, nature, and location of Kamusoko's crime spree, his flight from officers,

---

[4] Defense counsel urged the jury to "pay attention to the details [and] follow the timeline." He further cited particular times, noting that Kamusoko was seen driving the stolen SUV an hour and 20 minutes following the robbery and less than a mile from the robbery, effectively making "one extremely slow getaway."

14

and his eventual apprehension. See *Hughes v. State*, 310 Ga. 453, 459 (3) (851 SE2d 580) (2020). Accordingly, the trial court did not abuse its discretion in finding the CAD reports relevant and allowing them to be introduced into evidence.

3. Kamusoko contends that his conviction for armed robbery against Myke (Count 2) should have been vacated because it was the identical crime to his conviction for hijacking a motor vehicle against Myke (Count 1). Specifically, he asserts that "this is not a merger situation - this is the same legal situation as occurs when a criminal defendant is convicted of both malice murder and felony murder: since a person cannot be punished twice for the same crime, the felony murder conviction is vacated as a matter of law." We find no error.

The record shows that Count 1 of Kamusoko's indictment charged him with the offense of hijacking a motor vehicle in violation of OCGA § 16-5-44.1 in that he "did unlawfully obtain a Kia Sorento, a motor vehicle, from the person and presence of Antonio Myke by intimidation while in possession of a handgun, a firearm[.]" Count 2 charged him with armed robbery in violation of OCGA § 16-8-41 in that he, "with the intent to commit a theft, did unlawfully take a Kia Sorento, a motor vehicle, property of Antonio Myke, from the person and immediate presence of Antonio Myke, by the use of a handgun, an offensive weapon[.]" Kamusoko argues that these

15

two counts, while nominally specifying separate offenses, alleged the exact same crime – the same taking of the same vehicle by use of the same firearm – and he should not have been convicted of both offenses because the armed robbery charge merely prohibits a designated kind of conduct generally, while the hijacking charge prohibits a specific instance of such conduct.

It is true that under OCGA § 16-1-7 (a) (2), an accused may not be convicted of more than one crime if "[t]he crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." However, the issue at hand repeatedly has been decided adversely to Kamusoko.

In *Mathis v. State*, 273 Ga. 508, 509-510 (1) (543 SE2d 712) (2001), the Supreme Court of Georgia specifically concluded that the prior version of OCGA § 16-5-44.1 (d) (1994) – which expressly provided that "[t]he offense of hijacking a motor vehicle shall be considered a separate offense and shall not merge with any other offense" – mandated that a defendant could be sentenced both for armed robbery and for hijacking a motor vehicle based on the same conduct.[5] According to

_____

[5] The statute was revised in 2017 to provide separate punishments for "first degree" and "second degree" hijacking a motor vehicle offenses, specifically limiting this prohibition on merger to first degree offenses: "The offense of hijacking a motor

16

the Court in *Mathis*, the proscription of merging hijacking a motor vehicle with other criminal statutes does not violate constitutional or statutory double jeopardy provisions. Id. at 509 (1); accord *Flannigan v. State*, 305 Ga. 57, 57, n. 1 (823 SE2d 743) (2019) (concluding that a trial court erroneously merged 2010 convictions for armed robbery and hijacking a motor vehicle). This Court likewise has concluded that OCGA § 16-5-44.1 (d) (1994) "expresses the clear legislative intent to impose double punishment for conduct which violates both [the offense of hijacking a motor vehicle] and other criminal statutes." *Whitehead v. State*, 304 Ga. App. 213, 216 (2) (695 SE2d 729) (2010) (citation and punctuation omitted).

The trial court did not err in refusing to vacate Kamusoko's conviction for armed robbery and sentencing him for both armed robbery and hijacking a motor vehicle.

---

vehicle in the first degree shall be considered a separate offense and shall not merge with any other offense." OCGA § 16-5-44.1 (d) (2017). However, this distinction is not relevant here because Kamusoko committed the offenses in 2016. See *Widner v. State*, 280 Ga. 675, 677 (2) (631 SE2d 675) (2006) ("It has long been the law in this State that, in general, a crime is to be construed and punished according to the provisions of the law existing at the time of its commission.") (citation and punctuation omitted); accord *Martinez-Chavez v. State*, 352 Ga. App. 142, 143 (1) (834 SE2d 139) (2019) (a trial court is obligated to sentence a defendant pursuant to the statute in effect at the time he committed his crime).

17

4. Kamusoko argues that the trial court erred in sentencing him on Count 3 to 25 years in prison for attempted armed robbery – in connection with his actions against Ellison – when the facts alleged in the indictment would have supported a charge for hijacking a motor vehicle against Ellison, which only mandates a sentence of 10 to 20 years in prison.[6] This argument, however, rests on a fundamental misunderstanding of the proper application of the rule of lenity and thus fails.

"The rule of lenity applies when a statute, or statutes, establishes, or establish, different punishments for the same offense, and provides that the ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment." *Banta v. State*, 281 Ga. 615, 617 (2) (642 SE2d 51) (2007)." However, if "two defined crimes do not address the same criminal conduct, there is no ambiguity

___

[6] "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]"OCGA § 16-8-41 (a). The penalty for committing an attempted armed robbery is imprisonment for not less than one year nor more than 30 years. OCGA §§ 16-4-6 (a); 16-8-41 (b). Under the applicable version of the hijacking a motor vehicle statute, "[a] person commits the offense of hijacking a motor vehicle when such person while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence or intimidation or attempts or conspires to do so." OCGA § 16-5-44.1 (b) (2016). The penalty for committing this offense is "imprisonment for not less than ten nor more than 20 years and a fine of not less than $10,000.00 nor more than $100,000.00." OCGA § 16-5-44.1 (c) (2016).

18

created by different punishments being set forth for the same crime, and the rule of lenity does not apply." Id. at 618 (2). As the Supreme Court of Georgia has explained:

> [T]hat a single act may, as a factual matter, violate more than one penal statute does not implicate the rule of lenity. For instance, depending upon attendant circumstances, it is possible for the act of striking another person with an object to meet the definitions of each of the crimes of: simple battery, OCGA § 16-5-23, a misdemeanor; aggravated battery, OCGA § 16-5-24, a felony; simple assault, OCGA § 16-5-20, a misdemeanor; aggravated assault, OCGA § 16-5-21, a felony; and malice murder, OCGA § 16-5-1, a felony. In such a circumstance, a defendant may be prosecuted for more than one crime. OCGA § 16-1-7 (a). However, the injustice that must be avoided is *sentencing* the defendant for more than one crime following his conviction of multiple crimes based upon the same act. When a defendant is so prosecuted, the principle of factual merger operates to avoid the injustice.

*Banta*, 281 Ga. at 618 (2) (citations omitted, emphasis in original). Moreover,

> [a]lthough the rule of lenity may require a court to reverse a *conviction* based upon the violation of a statutory provision that has been effectively abrogated by a duplicative provision imposing a lesser penalty, the rule does not allow the court to impose a *sentence* for an offense different than the one unambiguously provided for in the statute to which the defendant pled or was found guilty.

19

*State v. Hanna*, 305 Ga. 100, 105 (2) (823 SE2d 785) (2019) (emphases in original); accord *Brown v. State*, 307 Ga. 24, 32 (5) (834 SE2d 40) (2019); *Davis v. State*, 306 Ga. 140, 143 (2) (829 SE2d 321) (2019).

Here, Kamusoko was charged with, convicted of, and sentenced for criminal attempt to commit an armed robbery in violation of OCGA § 16-8-41 in that he

> did with the intent to commit a theft, approach Darrell Ellison with a handgun and demand said victim's motor vehicle from his immediate presence, an act which constitutes a substantial step toward the commission of [armed robbery.]

Kamusoko was not charged with or convicted of hijacking a motor vehicle with respect to his actions against Ellison. And on appeal he does not challenge his conviction for the attempted armed robbery of Ellison based on the rule of lenity; he merely challenges his sentence. Kamusoko, however, was sentenced properly for his conviction of attempted armed robbery, and because he was not charged with or convicted of hijacking a motor vehicle with respect to Ellison, the trial court was not

20

permitted to sentence him for the uncharged offense.[7] See *Davis*, 306 Ga. at 143 (2); *Hanna*, 305 Ga. at 105 (2). Accordingly, this claim is without merit.

5. In his final enumeration of error, Kamusoko asserts that his trial counsel rendered ineffective assistance by (a) failing to properly argue the motion in limine regarding the CAD reports addressed in Division 2 of this opinion, and (b) failing to object to the trial court's sentence for the reasons addressed in Divisions 3 and 4 of this opinion. The court found that Kamusoko did not meet his burden of establishing ineffective assistance. We conclude that the trial court did not err in denying Kamusoko's motion for new trial on this ground. See *Hulett v. State*, 296 Ga. 49, 60 (5) (766 SE2d 1) (2014) (an ineffective-assistance claim is a mixed question of law and fact, and we accept the trial court's factual findings unless clearly erroneous but independently apply the law to those facts); see also *Strickland v. Washington*, 466 U. S. 668, 698 (IV) (104 SCt 2052, 80 LE2d 674) (1984).

---

[7] We note that, as we concluded in Division 3 of this opinion, had Kamusoko been charged with and convicted of both attempt to commit an armed robbery and hijacking a motor vehicle with respect to his actions against Ellison, the trial court would have been obligated to sentence him for both offenses since the applicable version of OCGA § 16-5-44.1 (d) (2016) "expresses the clear legislative intent to impose double punishment for conduct which violates both [the offense of hijacking a motor vehicle] and other criminal statutes." *Whitehead*, 304 Ga. App. at 216 (2); accord *Mathis*, 273 Ga. at 509-510 (1).

21

In order to establish that his trial counsel was constitutionally ineffective, Kamusoko must show that his attorney's performance was deficient and that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687 (III). "Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms." *Manner v. State*, 302 Ga. 877, 881 (II) (808 SE2d 681) (2017). "This requires a defendant to overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Morris v. State*, 303 Ga. 192, 201 (VI) (811 SE2d 321) (2018) (citation and punctuation omitted). To satisfy the second prong, there must be a reasonable probability that, absent counsel's errors, the outcome of the trial would have been different. *Manner*, 302 Ga. at 881-882 (II). Kamusoko must satisfy both prongs of the *Strickland* test, and if he is unable to satisfy one, we need not examine the other. *Morris*, 303 Ga. at 201 (VI). Here, Kamusoko failed to establish deficient performance.

(a) In a one-paragraph argument, Kamusoko first asserts that his trial counsel was ineffective by failing "to argue the motion in limine" to exclude the CAD reports

22

discussed in Division 2 of this opinion. The record shows, however, that trial counsel, in fact, did argue against admission of the CAD reports. Nevertheless, Kamusoko urges us to find that his trial counsel was ineffective because he only argued against admissibility of the reports based on hearsay and did not consider arguing that the reports were irrelevant. Trial counsel was not ineffective in this regard.

As we concluded in Division 3 of this opinion, the CAD reports were relevant to the nature, circumstances, and location of Kamusoko's crime spree, his flight from officers, and his eventual apprehension. See *Hughes*, 310 Ga. at 459 (3). Consequently, Kamusoko cannot show that his trial counsel's failure to make a relevance argument to the introduction of the reports fell outside the range of reasonable professional conduct. *Davis v. State*, 306 Ga. 594, 599-600 (2) (b) (832 SE2d 341) (2019) (failure to make a meritless objection will not support a finding of deficient performance for an ineffectiveness claim). Accordingly, Kamusoko failed to demonstrate that his trial counsel was ineffective on this ground.

(b) Kamusoko also asserts that his trial counsel was ineffective by failing to argue during sentencing that (i) his conviction for the armed robbery of Myke in Count 2 should have been vacated because it was the identical crime to his conviction for hijacking a motor vehicle of Myke in Count 1, and (ii) the court should have

23

sentenced him for the uncharged offense of hijacking a motor vehicle rather than the Count 3 charged offense – for which he was convicted – of attempted armed robbery of Ellison. Contrary to Kamusoko's argument, his trial counsel was not deficient for failing to raise these issues with the court. As we found in Divisions 3 and 4 of this opinion, the trial court did not err in refusing to vacate Kamusoko's conviction for armed robbery and sentencing him for armed robbery, hijacking a motor vehicle, and attempted armed robbery, and, therefore, any such objections would have been meritless. See *Parfenuk v. State*, 338 Ga. App. 95, 100-101 (3) (789 SE2d 332) (2016) (trial attorney not ineffective for failing to argue the application of the rule of lenity during sentencing because the rule did not apply); see also *Whitehead*, 304 Ga. App. at 216-217 (2)-(3) (trial attorney not ineffective for failing to raise a merger/double jeopardy issue at sentencing because double punishment for armed robbery and hijacking a motor vehicle was warranted). The trial court did not err in denying Kamusoko's motion for new trial on this ground.

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*

24